609 A.2d 162

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Robert Kim MYERS, Appellant.**

Supreme Court of Pennsylvania.

Argued March 11, 1992.

Decided May 22, 1992.

Mark Mansour, Asst. Public Defender, Greensburg, for appellant.

John Driscoll, Dist. Atty. and Alfred B. Bell, First Asst. Dist. Atty., Greensburg, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

In 1988, in a trial by jury in the Court of Common Pleas of Westmoreland County, the appellant, Robert Kim Myers, was convicted of murder in the first degree. A sentence of life imprisonment was imposed. An appeal was taken to the Superior Court, 400 Pa.Super. 621, 576 A.2d 1136, and, in a memorandum decision, the judgment of sentence was affirmed. The present appeal, by allowance, ensued. We reverse.

Appellant was charged with the murder of his wife. At issue in this appeal is the admissibility of certain out-of-court declarations made by appellant's wife a number of months before her death. The declarations related to physical abuse inflicted upon her by appellant. The factual background of the case is as follows.

On April 4, 1988, appellant summoned an ambulance for his estranged wife, whom he said was injured and lying on the porch of his house. Police arrived at the scene and found that appellant's wife was dead. She had been murdered, a victim of multiple stab wounds. A knife was discovered beside her body. Police found appellant locked inside the house, slumped over on a couch. He had suffered several stab wounds. Investigators determined that appellant's wounds were self-inflicted. Appellant was arrested and charged with murder.

Prior to trial, appellant filed a motion *in limine* to preclude the admission of certain evidence, including that which is here at issue. The motion was denied.

The issue presented is whether the trial court erred in allowing one of the Commonwealth's witnesses, Margaret Culp, to testify that a number of months prior to the murder the victim told her that appellant had beaten her. Appellant contends that this testimony constituted inadmissible hearsay. We agree.*

The testimony given by Culp was as follows:

Q. In the summer of '86 did anything unusual occur in your yard relative to yourself and Mrs. Myers?

A. She came to visit and walked into my yard, and she was terribly beat up, her face and eye were all terribly bruised, and her tooth was chipped, and *she told me that her husband beat her up.*

Q. How was she at that time emotionally?

A. Very depressed; she spent the weekend with me, she cried the entire weekend.

Q. Did either you or she seek medical attention for her at that time?

A. Yes, I took her to the Apollo Clinic and I told her that you should have this on record in case some time you might need it, and I took her to the dentist the next day and had her tooth fixed.

---

* In view of our disposition of this issue, we need not address the numerous other grounds for reversal asserted by appellant.

Q. Would you say, ma'am, that you were friends with both Mr. Myers and Mrs. Myers?

A. I was friends with Mrs. Myers for twenty years. I was friends with [appellant] until *he started beating her up.*

Q. That was after you learned of this incident in the summer of '86, is that right? Well, that is you observed physical abuse at that time, is that right?

A. Yes.

Q. In the summer of 1986 she came into your yard, you observed damage to her physically?

A. Yes.

Q. And then she told you how that damage had come about?

A. Yes.

Q. *You never actually saw any of that damage being done to her yourself?*

A. *No.*

(Emphasis added).

Plainly, Culp had no firsthand knowledge that the injuries which she observed upon the victim were caused by beatings inflicted by appellant. Her testimony in this regard was pure hearsay. *Commonwealth v. Lippert,* 454 Pa. 381, 311 A.2d 586 (1973) (where husband was charged with murdering his wife, testimony regarding declarations of wife as to previous abuse inflicted by husband must be excluded as hearsay).

In holding that this testimony was properly admitted, however, the Superior Court relied upon two of its own recent decisions. These decisions were viewed as creating a new exception to the hearsay rule. Specifically, in *Commonwealth v. Gibson,* 363 Pa.Super. 466, 526 A.2d 438 (1987), the Superior Court held that, for purposes of a murder prosecution, it was proper for a witness to testify that bruises were observed on the victim many months prior to the murder and that, around that same time, the victim

stated that beatings had been inflicted by her husband. The court reasoned as follows:

> The law is clear that evidence concerning the previous relations between a defendant and a homicide victim is relevant and admissible for the purpose of proving ill will, motive or malice. Evidence of prior occurrences in which the accused threatened, assaulted, or quarrelled with the decedent may be admissible for this purpose. This principle applies when the decedent was the spouse of the accused. Thus evidence concerning the nature of the marital relationship is admissible for the purpose of proving ill will, motive or malice. This includes, in particular, evidence that the accused physically abused his or her spouse. *Commonwealth v. Ulatoski,* 472 Pa. 53, 61, 371 A.2d 186, 190 (1977) (citations omitted).

363 Pa.Super. at 468–69, 526 A.2d at 440.

Similarly, in *Commonwealth v. Mikesell,* 371 Pa.Super. 209, 219, 537 A.2d 1372, 1377 (1988), appeal denied, 520 Pa. 587, 551 A.2d 214 (1988), the Superior Court, relying upon its decision in *Gibson,* supra, held that it was permissible for a homicide victim's mother to testify that she was told by her daughter, the victim, that the defendant, the victim's husband, made certain threats. The court viewed these threats as being probative of the defendant's ill will and malice towards his wife and held them admissible as an exception to the hearsay rule under *Gibson.*

It is clear, however, that *Gibson,* which expressly relied upon our decision in *Commonwealth v. Ulatoski,* 472 Pa. 53, 371 A.2d 186 (1977), was erroneous in its interpretation of that decision. In *Ulatoski,* we emphasized that evidence concerning the previous marital relationship between a defendant and a homicide victim may be relevant and admissible to prove ill will, motive, or malice, and that such evidence can include instances in which the defendant threatened, quarrelled with, or physically abused the victim. 472 Pa. at 60–61, 371 A.2d at 190. Accord *Commonwealth v. Albrecht,* 510 Pa. 603, 618–19, 511 A.2d 764, 771–72 (1986), cert. denied, 480 U.S. 951, 107 S.Ct. 1617, 94 L.Ed.2d

801 (1987). To no extent, however, did *Ulatoski* indicate that evidence relevant to the marital relationship was exempt from compliance with established rules governing its admission. Indeed, the express language of the decision was to the contrary: "Testimony concerning the marital relationship between a defendant and decedent, like any other evidence, *is subject to the general evidentiary rules governing competency and relevancy.* " (Emphasis added; footnote omitted). 472 Pa. at 63, 371 A.2d at 191. Hence, *Ulatoski* did not create an exception to the hearsay rule; nor did it contemplate that testimony regarding marital relationships in cases such as this would be subject to a relaxed standard of admissibility.

Similarly, in *Lippert,* supra, where testimony virtually identical to that which is at issue here was held to be inadmissible hearsay, we stated:

> The prosecution argues that evidence of the prior relationship between the accused and the victim is relevant in a murder case. We agree, but the rule, upon which they rely, is a rule of relevancy, and does not mean that the evidence is necessarily competent. Evidence that is relevant is nonetheless inadmissible if it violates the hearsay rule or any exclusionary rule of evidence.

454 Pa. at 383–84, 311 A.2d at 587.

Under the hearsay rule, the testimony given by Culp regarding declarations previously made by the homicide victim was plainly inadmissible. None of the recognized exceptions to the rule were applicable. Testimony that appellant inflicted beatings upon his wife was clearly prejudicial, and, hence, a new trial is required.

Judgment of sentence reversed, and a new trial granted.

McDERMOTT, J., files a concurring opinion.

PAPADAKOS, J., files a dissenting opinion.

McDERMOTT, Justice, concurring.

I am constrained to agree that the evidence of the victim's prior statements was rendered inadmissible on hear-

say grounds: that is not to say, however, that the visual evidence which the witness observed was inadmissible. *See Commonwealth v. Ulatoski,* 472 Pa. 53, 371 A.2d 186 (1977). Such evidence has circumstantial value tending to show that the victim had previously been beaten.

PAPADAKOS, Justice, dissenting.

I dissent from the majority opinion on two grounds: the opinion has the unfortunate effect of establishing a per se rule that the use of any hearsay evidence must result in a new trial and, secondly, fails to give proper consideration to the related issue of harmless error.

With the exception of one conclusory sentence, the entire remainder of the majority opinion is devoted to proving that the testimony of Margaret Culp was hearsay. The stated conclusion (opinion, p. 165) is that "Testimony that appellant inflicted beatings upon his wife was prejudicial, and, hence, a new trial is required."[1] I find no argument within the opinion supporting such a conclusion and balk at the suggestion that the introduction of hearsay evidence will be per se prejudicial.

On the merits, as well, the evidence of the Appellant's guilt is dispositive beyond a reasonable doubt. As related by Appellant at trial, his wife, the victim, attacked him with a knife. In the ensuing struggle, "I stabbed my wife and I had stabbed myself, and we both fallen to the ground" (T.T., pp. 654, 696–698). This version would account for the fact that the knife, with unidentifiable fingerprints, had blood from both Appellant and his wife. The jury, however, had reason to believe beyond a reasonable doubt that his self-inflicted wounds were a cover-up for the murder. Appellant additionally had difficulty in explaining why he possessed a new syringe and a small amount of Drano in his coat which he took to his wife's house although he had been banned from returning there by court order (T.T., pp. 688–691).

---

1. Mrs. Culp testified that she had not witnessed any beatings but was told of the abuse by the victim (T.T., pp. 107–114).

The majority also overlooked the fact that Appellant himself testified that, indeed, he had beaten his wife so severely that once she required hospitalization and also that he had rammed her car while she was driving it (T.T., pp. 668–674). Witness Culp had testified to such beatings, but even though her testimony was hearsay, I fail to see how that testimony was prejudicial in light of Appellant's admissions on point.