Robert Jeffrey FARMER,
Petitioner–Appellee,

v.

E.K. McDANIEL; * Attorney General of
the State of Nevada, Respondents–
Appellants.

No. 95–99016.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 18, 1996.

Decided Oct. 29, 1996.

---

* E.K. McDaniel, the current warden of the Nevada State Prison that has custody of Robert Jeffrey Farmer, has been substituted for Ron Angelone, in accordance with Fed.R.Civ.Proc. 25(d)(1), and pursuant to Federal Rule of Appellate Procedure 43(c)(1).

Robert E. Wieland, Deputy Attorney General, Carson City, NV, for respondents-appellants.

Michael Pescetta, Assistant Federal Public Defender, Las Vegas, NV, for petitioner-appellee.

Before: SCHROEDER, RYMER and KLEINFELD, Circuit Judges.

RYMER, Circuit Judge:

This appeal requires us to consider a novel, but narrow question: whether an amended third habeas corpus petition by a prisoner in state custody may be subject to dismissal for abuse of the writ even though prior petitions were dismissed for failure to exhaust and thus were not reviewed on the merits.[1] The district court thought not, but the State of Nevada wants the opportunity to argue that Robert Jeffrey Farmer has filed a series of petitions with new, unexhausted claims to avoid (and delay for more than seven years) a review of his sentence and conviction in federal court. It has timely appealed a judgment dismissing Farmer's amended third petition pursuant to *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

Although Farmer submits that dismissal of his amended third petition without prejudice is not a final, appealable order, and that the state lacks standing to appeal from an order in its favor, we think otherwise. As a practical matter, dismissal of Farmer's petition put an end to this action in the district court and, despite prevailing to the extent that Farmer is required to exhaust claims that the state contends were unexhausted, Nevada did not get all that it wanted—dismissal with prejudice of claims asserted for abuse of the writ—but instead faces the prospect of further litigation on these claims in a different forum. For this reason the State has standing to appeal from that part of the order that is unfavorable to it. Having jurisdiction, we conclude that when the state alleges that the grounds for relief alleged in a second or subsequent petition are "new and different" under Rule 9(b) of the Federal Habeas Corpus Rules, abuse of the writ analysis is not foreclosed as a matter of law solely because prior petitions have not been reviewed on the merits. Rather, this should simply be an important factor that informs the district court's discretion in applying the abuse of the writ doctrine. We therefore vacate the district court's judgment and re-

---

1. We decide this question entirely under the law as it existed prior to enactment of the "Antiterrorism and Effective Death Penalty Act of 1996." Pub.L. No. 104–132, 110 Stat. 1214 (April 24, 1996). Although § 107, to be codified in part at 28 U.S.C. § 2266(c), by its terms makes the Act's Special Habeas Corpus rules applicable to all capital cases pending on the date of enactment (if other conditions are also met), no one has suggested that the conditions are met and that the Act in fact applies to this appeal.

mand for it to consider whether any of the grounds alleged in the amended petition are "new and different" from those grounds alleged in Farmer's second petition and, if so, whether Farmer's failure to assert those grounds in his prior (second) petition was an abuse of the writ.

## I

Farmer murdered a man the night of January 18–19, 1982. On March 26, 1984, he pleaded guilty to murder in the first degree and was sentenced to death. The Nevada Supreme Court affirmed his conviction and sentence August 27, 1985, *Farmer v. State of Nevada,* 101 Nev. 419, 705 P.2d 149 (1985), and the United States Supreme Court denied his petition for certiorari, *Farmer v. Nevada,* 476 U.S. 1130, 106 S.Ct. 1999, 90 L.Ed.2d 679 (1986).

On September 16, 1986, Farmer filed a petition for a writ of habeas corpus in the state trial court and a week later, filed his first petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in federal district court. The federal petition, filed with the assistance of counsel, sought a stay of execution, which the district court entered. The petition also, however, alleged different grounds for relief from those being pursued in state court, which prompted the district court to warn Farmer that his failure to assert grounds known to him in his federal petition may bar the assertion of such grounds in a future federal petition as an abuse of the writ.[2] As a result, Farmer moved to dismiss the petition without prejudice. The district court so ordered February 6, 1987, to permit Farmer to exhaust state remedies. Although the court also vacated the stay of execution, it appears that no new

date was set while state habeas proceedings were pending.

The Nevada Supreme Court ultimately refused to address the merits of Farmer's claims because they "have been either procedurally barred, or [ ] Farmer has failed to sustain his burden of proof or show prejudice." *Farmer v. Director, Nevada Dept. of Prisons,* 104 Nev. 856, 809 P.2d 603 (1988) (unpublished disposition). The United States Supreme Court denied certiorari February 27, 1989. *Farmer v. Sumner,* 489 U.S. 1060, 109 S.Ct. 1331, 103 L.Ed.2d 599 (1989).

Farmer filed his second federal habeas petition April 7, 1989. The district court stayed Farmer's rescheduled execution date of May 2, 1989; appointed new counsel to represent him in the federal proceedings; and again cautioned Farmer that if he "fails to include all possible grounds for relief, he may later be precluded from raising the previously omitted grounds because the omission may be considered an abuse of the writ" under Rule 9(b). On July 13, 1989, Farmer moved to dismiss his second petition without prejudice because "he has claims to raise which have not heretofore been raised in state court, and therefore could not raise in this petition due to the exhaustion of state remedies requirement." Nevada opposed dismissal on the ground that the claims Farmer wanted to exhaust in the state court either were not legitimate constitutional claims or were procedurally barred. Meanwhile, Farmer asked the court to hold the federal proceeding in abeyance rather than dismiss it, in the event the state court refused to issue a stay. However, the court again dismissed Farmer's petition without

---

2. The district court's November 4, 1986 minute order states:

It appears that petitioner is pursuing post-conviction relief in the State court on grounds not addressed in the 2254 petition filed in this Court. The Court notes that if petitioner goes forward in this manner, he may be waiving his right to seek federal habeas relief in the future with regard to those issues which are being pursued in the State court and which are not included in the petition before this Court. The failure of petitioner to assert grounds known to him in a petition may bar the assertion of such

grounds in a future petition for habeas corpus in the federal district court as an abuse of the writ. Here petitioner and his counsel are well advised of additional possible habeas grounds which could be asserted before this Court but which are unexhausted and are being pursued in the State court. If petitioner desires to preserve the right to pursue the issues being raised in the State Court in future federal habeas proceedings, he may want to consider the dismissal of this petition without prejudice so that the additional issues may be exhausted.

prejudice under *Rose v. Lundy*,[3] and dissolved the stay of execution.

Farmer then started a new round of state proceedings, which ended when the Nevada Supreme Court dismissed his appeal from the dismissal of his petition for post-conviction relief. On May 11, 1993, Farmer filed his third federal habeas petition. Nevada moved to dismiss the petition with prejudice as an abuse of the writ under Rule 9(b), and also raised exhaustion and procedural default defenses. The district court denied Nevada's motion to dismiss as premature; rejected Nevada's abuse of the writ defense since Farmer's two prior federal habeas petitions "were dismissed by the court because they included unexhausted claims; they were not dismissed on the merits of those claims"; and, responding to *McCleskey v. Zant*, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), allowed Farmer six months to amend his third federal petition setting forth "all possible grounds for relief."

Pursuant to this order, Farmer filed his amended third petition for writ of habeas corpus August 15, 1994. He alleged that 10 of its 27 claims had "arguably" been exhausted, but that none had been deliberately withheld or waived. Contending that Rule 9(b) covers situations in which new claims are raised which were not raised in the first petition, and relying on the decision of the United States Supreme Court in *McCleskey*, Nevada moved to dismiss the petition with prejudice on the ground that the court was obliged to conduct an abuse of the writ inquiry in light of Farmer's writ history (which, in the state's view, would show that the amend-

ed third petition was filed only to vex, harass and delay, and that the new claims of error could and should have been exhausted in accordance with the court's prior orders) before it reached whatever *Rose v. Lundy* problems continued to lurk in the third amended petition. The state also argued that the unexhausted claims were procedurally barred, and conclusory. As before, Farmer requested dismissal without prejudice so that he could return to state court to exhaust his new and unexhausted claims. Noting that all of the state's other arguments were addressed when its first motion to dismiss was denied, the district court again dismissed pursuant to *Rose v. Lundy*, advising that "this will be the *only* opportunity to return to state court to exhaust any unexhausted grounds." [4]

Nevada filed a timely notice of appeal from the district court's "Order Dismissing Mixed Petition and the Judgment in a Civil Case entered June 27, 1995 as to all issues of law." [5] Farmer moved to dismiss for lack of jurisdiction. We consider this motion first.

## II

Farmer challenges our jurisdiction because the district court's disposition is not a final order, and because Nevada is not an aggrieved party inasmuch as dismissal on exhaustion grounds favors the state. He argues that the order and judgment dismissed only the amended petition, not the underlying action, and that even if the state prevailed on its abuse of the writ theory, the result would be the dismissal with prejudice of only some of the claims in the amended

---

3. In *Rose v. Lundy*, the Court adopted a total exhaustion rule which, in effect, gives habeas litigants who initially submit a mixed petition of exhausted and unexhausted claims a chance to resubmit a petition with only exhausted claims or to exhaust the remainder of their claims, thereafter presenting the federal court "with a single habeas petition." 455 U.S. at 520, 102 S.Ct. at 1204. The Court cautioned, as the district court did here in its orders dismissing Farmer's first two petitions, that a prisoner who proceeds with exhausted claims and deliberately sets aside unexhausted claims risks dismissal of subsequent federal petitions on abuse of the writ grounds.

4. The order further provided that "[i]f Petitioner learns of additional unexhausted grounds not

currently alleged in this action while the state court proceedings are pending *and* is able to exhaust those grounds prior to returning to this Court, then those additional *exhausted* grounds will be allowed to be raised in this court in a subsequent petition." The district judge set time limits, and ordered that a new action be assigned to him rather than by draw.

5. After briefing but before oral argument on Nevada's appeal, Farmer filed a motion to take judicial notice of the subsequent state court proceedings in this case. We deny the motion inasmuch as what has occurred in Nevada state court since the district court dismissed the action and amended third petition is not material to the narrow issue we face on appeal.

petition. As dismissal of some, but not all, claims in a habeas petition is not a final order, Farmer suggests, the order appealed from is not a final decision. Nevada counters that it does seek review of a final order since the district court entered a judgment dismissing the action, the state will lose its right to have this petition decided unless we consider its appeal, and the practical effect of the court's order is to grant Farmer a stay of indeterminate length. Farmer contends that regardless, Nevada lacks standing since the order it seeks to appeal granted its own motion to dismiss.

### A

■ "In a habeas corpus proceeding before a circuit or district judge, the *final order* shall be subject to review, on appeal, by the court of appeals for the circuit where the proceeding is had." 28 U.S.C. § 2253 (emphasis added); *see also Blazak v. Ricketts,* 971 F.2d 1408, 1410 (9th Cir.1992) ("The settled rule in civil proceedings that we have jurisdiction over only final judgments applies to habeas proceedings."). The Supreme Court has instructed that "the finality requirement should be given a practical rather than a technical interpretation." *United States v. Lee,* 786 F.2d 951, 956 (9th Cir.1986) (*citing Gillespie v. United States Steel Corp.,* 379 U.S. 148, 152, 85 S.Ct. 308, 310–11, 13 L.Ed.2d 199 (1964)). A final order is generally one that "ends the litigation and leaves nothing more for the court to do," *id.* (citations omitted), such that, "[u]nless the district court's order is overturned on appeal, nothing is left for the district court but to ensure the execution of its judgment," *Blazak,* 971 F.2d at 1411. Similarly, "an order which effectively sends a party out of court is appealable," *Lee,* 786 F.2d at 956; *see also Herrington v. County of Sonoma,* 706 F.2d 938, 939 (9th Cir.1983) (same), and "[a] decision is final for purposes of appeal if an appeal is the only method of obtaining review," *Lee,* 786 F.2d at 956.

■ We do not agree with Farmer's argument that the district court dismissed only the petition. In terms, its order and judgment dismissed the action, and each of Farmer's three federal habeas petitions launched a new action, with a new number. *Proud v. United States,* 704 F.2d 1099, 1100 (9th Cir. 1983) (per curiam), upon which Farmer relies, is inapposite because the district court in *Proud* dismissed the complaint but not the action.

Regardless, Farmer contends, an order dismissing a complaint without prejudice is not final because it contemplates a new or amended filing. However, a dismissal "without prejudice" can be just as final as one "with prejudice" if it is "intended to end the litigation in the court involved but not to act as an adjudication on the merits or to bar the filing of a similar action in another court." *McGuckin v. Smith,* 974 F.2d 1050, 1053 (9th Cir.1992). Examples of such orders abound, including analogous dismissals for failure to exhaust administrative remedies, *see United States v. Orr Water Ditch Co.,* 914 F.2d 1302, 1306–07 (9th Cir.1990), and for failure to exhaust the grievance procedures under a collective bargaining agreement, *see Ramirez v. Fox Television Station, Inc.,* 998 F.2d 743, 746–47 (9th Cir.1993). Dismissal of Farmer's amended third petition for failure to exhaust effectively terminated the litigation in district court, sending the parties out of the federal system. *See Quackenbush v. Allstate Insurance Co.,* —— U.S. ——, ——, 116 S.Ct. 1712, 1716, 135 L.Ed.2d 1 (1996) (order remanding on abstention grounds is appealable as a final order because "it puts the litigants in this case effectively out of [federal] court"). This leaves nothing for the district court to do unless and until Farmer exhausts state court remedies and files a new action in federal court.

Nor do we believe that finality of the district court's order in this case can hinge on what might have happened if the court had considered the state's motion to dismiss for abuse of the writ, dismissing some but not all of the claims, and whether *that* order would be final. Farmer's reliance on *Bermudez v. Smith,* 797 F.2d 108 (2d Cir.1986), where the district court ordered dismissal of only four of seven claims alleged in the prisoner's habeas petition and the Second Circuit held that such an order of partial dismissal wasn't final, is misplaced because here the district court dismissed Farmer's entire petition. It

is dismissal of the entire petition that is the final order, not the court's ruling (one way or the other) on the abuse of the writ issue.

Farmer finally contends that even though an order dismissing a petition as a "mixed" petition is a final order for jurisdictional purposes when it is the *prisoner* who is appealing, *see, e.g., Weaver v. Foltz,* 888 F.2d 1097 (6th Cir.1989) (reversing district court order dismissing a mixed petition, and directing the court on remand to address the merits of the exhausted claims); *Wise v. Fulcomer,* 958 F.2d 30 (3rd Cir.1992) (vacating district court order dismissing habeas petition for failure to exhaust state remedies, and directing the court on remand to decide whether the petition constitutes an abuse of the writ); *see also* 2 James S. Liebman & Randy Hertz, *Federal Habeas Corpus Practice and Procedure* § 35.1, at 1050 (2d ed. 1994) ("[A]n order denying all the claims for relief in the petition or dismissing the petition as a whole ... [is] appealable."), it is final *only* when the prisoner appeals from it. This cannot be. An order is either final or not final, without regard to which party asks the court of appeals to review it. Our decision in *Confederated Salish v. Simonich,* 29 F.3d 1398 (9th Cir.1994), on which Farmer relies, does not suggest otherwise. We held in *Simonich* that an order denying a motion to dismiss under the abstention doctrine of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), was not a final order. *Simonich* thus turns on the unremarkable rule that some orders are final—such as an "order abstaining under *Younger* and dismissing the case"—while some are not—like a district court's order that it "will *not* abstain under *Younger* and dismiss the case." *Id.* at 1401.[6]

We therefore hold that the district court's order dismissing Farmer's amended third habeas petition for his failure to exhaust state avenues of relief is a final order.[7]

**B**

Notwithstanding an appealable final order, an appeal may be taken only by those who have standing. Farmer contends that Nevada lacks standing, arguing only that this case parallels *Dolenc v. Love,* 40 F.3d 656 (3d Cir.1994). There, the Third Circuit dismissed Pennsylvania's appeal from an order that dismissed Dolenc's fourth habeas petition on exhaustion grounds. Pennsylvania complained on appeal that a renewed abuse of the writ plea to Dolenc's anticipated fifth petition would be barred on grounds of collateral estoppel or law of the case. Noting that Pennsylvania would have standing if it were correct that the district court's ruling would operate as law of the case, the Third Circuit couldn't see why the district court would be precluded from re-examining the issue. *Id.* at 657–58. The posture of this case and the position of the state on this appeal are different, however. Unlike the district court in *Dolenc,* the district court here did not rule on the merits of the state's motion to dismiss for abuse of the writ but rather concluded that it could not reach that issue as a matter of law because it had not previously disposed of Farmer's claims on the merits. Nevada complains on appeal that this ruling prevents it from getting a ruling on the merits of the abuse of the writ issue so long as Farmer continues to file unexhausted or mixed petitions, and prevented it from arguing for a dismissal with prejudice of Farmer's amended third petition. As it will never have another opportunity to have *that* decision reviewed, the state is sufficiently aggrieved by the district court's adverse ruling to have standing to appeal. *See, e.g., Hoover v. Switlik Parachute Co.,* 663 F.2d 964, 966 (9th Cir.1981) (a defendant has standing to appeal from the grant of summary judgment for a codefendant, because in granting summary judgment the district court made a subsidiary ruling adverse to the appealing defendant); *LaBuhn v. Bulkmatic Transp. Co.,* 865 F.2d 119, 121–22 (7th Cir. 1988) ("For a prevailing defendant to appeal is unusual but not impermissible. Obviously,

---

6. This is not to say, of course, that every party to an action has the right to appeal from every final order. But the determination of *who* can appeal depends on principles of "standing" rather than of finality, which we address in Part IIB.

7. Because we hold that the order is final, we need not consider whether it is immediately appealable as a "collateral" order under *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

you can't appeal from a decision that is *entirely* in your favor.... But you can appeal from the parts of a generally favorable order that are unfavorable to you...."); *Deposit Guaranty Nat'l Bank v. Roper,* 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980).

We therefore conclude that we have jurisdiction, and now proceed to the merits.

### III

■ Nevada first argues that presentation of unexhausted claims in the amended third petition constituted an abuse of the writ and that the district court erred by failing to dismiss the petition as a whole as an abuse of the writ. We reject this argument, as it misapprehends the discretion that is reposed in district courts to decide whether there has been an abuse of the writ on a case-by-case basis. *See, e.g., Howard v. Lewis,* 905 F.2d 1318, 1321 (9th Cir.1990) (review of decision to deny consideration of habeas petition on the merits is for abuse of discretion); Habeas Corpus Rule 9, Advisory Committee Notes, at 801 ("bar set up by subdivision (b) [of Rule 9] is not one of rigid application, but rather is within the discretion of the courts on a case-by-case basis"). The state further asks us to require the district court to find that the presentation of unexhausted claims in the amended third petition is an abuse of the writ. This we also will not do. Rather, we consider only the narrow legal question of whether the district court correctly concluded that "although the *McCleskey* case is intolera[nt] of subsequent petitions, it deals with subsequent petitions after the first petition has been dismissed on the merits."

On this point, Nevada contends that Rule 9(b) of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C.A. foll. § 2254, covers those situations in which new claims are raised which were not raised in the first petition if the judge finds that the failure to assert those grounds in a prior petition constituted an abuse of the writ. While the state does not disagree that Farmer's amended third petition contains unexhausted claims that make it subject to dismissal under *Rose v. Lundy,* it argues that inquiry had to be made into whether the petition constitutes an abuse of the writ or is otherwise subject to dismissal with prejudice as a threshold matter before the district court could dismiss for lack of exhaustion. Nevada maintains that it adequately pled abuse of the writ by noting Farmer's prior writ history, which indicates that all 27 of the claims presented in Farmer's amended third petition appeared for the first time in that petition. From this, it posits that the amended third petition was filed only to vex, harass and delay the final adjudication of Farmer's state court judgment.

Farmer counters that the district court properly refused to dismiss his amended third petition because it is not a "second or successive one" within the meaning of 28 U.S.C. § 2244(b) and Rule 9(b). Instead, he submits, the defense of abuse of the writ arises only when there has been an adjudication of a previous federal petition on the merits.

### A

"We look first to the plain language of the statute, construing the provisions of the entire law, including its object and policy, to ascertain the intent of Congress." *Alarcon v. Keller Indus., Inc.,* 27 F.3d 386, 389 (9th Cir.1994) (citations omitted). Rule 9(b) provides:

> **Successive Petitions.** A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.

28 U.S.C.A. foll. § 2254, Rule 9(b).[8]

By its terms, Rule 9(b) appears to contemplate two possibilities for dismissal of a sec-

---

**8.** Rule 1 provides that the Habeas Corpus Rules are applicable to petitions by persons in custody pursuant to a judgment of a state court. *See* 28 U.S.C. § 2254 Rule 1 ("[t]hese rules govern the procedure in the United States district courts on applications under 28 U.S.C. § 2254 ... by a person in custody pursuant to a judgment of a state court, for a determination that such custody

ond or successive petition: *one,* if the judge finds that it does not allege new or different grounds and the prior determination was on the merits; *the other,* if new and different grounds are alleged and the judge finds that the petitioner's failure to assert them in a prior petition was an abuse of the writ. Only the second clause is at issue here, as there is no contention in this case that the same grounds are alleged in the amended third petition as in any prior petition, or that there has been a prior merits determination on any of those grounds that precludes reexamination in the amended third petition.

Farmer says that Rule 9(b)'s reference to "second or successive petition" incorporates the concept of a prior merits determination into both clauses. But reading the Rule in this way would render the requirement in the first clause that "the prior determination was on the merits" redundant. We have difficulty reading the second clause as if it, too, includes a requirement that the prior petition (which did not include the grounds alleged in the subsequent petition) be a "prior determination on the merits." Literally, dismissal under this prong may occur if only two things are found: (1) new and different grounds are alleged and (2) the failure to assert those grounds in a prior petition constituted an abuse of the writ. Had Congress intended to limit the bases for dismissal of "new and different" grounds other than by what constitutes an abuse of the writ, it could have done so either by making the entire Rule applicable only if "the prior determination was on the merits" or by adding the phrase "determined on the merits" after the words "prior petition." Given how it is actually written, we cannot say that Rule 9(b) itself requires the prior petition that triggers abuse of the writ analysis to be one that was resolved on the merits.

The Advisory Committee Notes to Rule 9(b) indicate that the Rule distinguishes between "same ground" and "new and different" ground petitions on this basis. Habeas

Corpus Rule, Advisory Committee Notes, 28 U.S.C.A. foll. § 2254, at 798. As the Notes explain:

> **Subdivision (b)** deals with the problem of successive habeas petitions. It provides that the judge may dismiss a second or successive petition (1) if it fails to allege new or different grounds for relief or (2) if new or different grounds for relief are alleged and the judge finds the failure of the petitioner to assert those grounds in a prior petition is inexcusable.

In *Sanders v. United States,* 373 U.S. 1 [83 S.Ct. 1068, 10 L.Ed.2d 148] (1963), the court, in dealing with the problem of successive applications, stated: [9]

> Controlling weight *may* be given to denial of a prior application for federal habeas corpus or § 2255 relief only if (1) the same ground presented in the subsequent application was determined adversely to the applicant on the prior application, (2) the prior determination was on the merits, and (3) the ends of justice would not be served by reaching the merits of the subsequent application. [Emphasis added.]

### 373 U.S. at 15 [83 S.Ct. at 1077]

The requirement is that the prior determination of the same ground has been on the merits. This requirement is in 28 U.S.C. § 2244(b) and has been reiterated in many cases since *Sanders.* ...

With reference to a successive application asserting a new ground or one not previously decided on the merits, the court in *Sanders* noted:

> In either case, full consideration of the merits of the new application can be avoided [only] if there has been an abuse of the writ * * * and this the Government has the burden of pleading. * * *
>
> Thus, for example, if a prisoner deliberately withholds one of two grounds for

is in violation of the Constitution, laws, or treaties of the United States"). Farmer is such a person.

**9.** Although *Sanders* was concerned with a motion by a federal prisoner under § 2255, rather than an application for a writ of habeas corpus by a

state prisoner, the Court made clear that it was announcing principles that should be applied equally to all successive applications for federal habeas relief. *Sanders,* 373 U.S. at 15, 83 S.Ct. at 1077.

federal collateral relief at the time of filing his first application, * * * he may be deemed to have waived his right to a hearing on a second application presenting the withheld ground.

**373 U.S. at 17–18 [83 S.Ct. at 1078]**

Subdivision (b) has incorporated this principle and requires that the judge find petitioner's failure to have asserted the new grounds in the prior petition to be inexcusable.

. . . . .

Subdivision (b) is consistent with the important and well established purpose of habeas corpus. It does not eliminate a remedy to which the petitioner is rightfully entitled. However, in *Sanders,* the court pointed out:

Nothing in the traditions of habeas corpus requires the federal courts to tolerate needless piecemeal litigation, or to entertain collateral proceedings whose only purpose is to vex, harass, or delay.

**373 U.S. at 18 [83 S.Ct. at 1078]**

*Id.* at 799–800.

Although Farmer correctly argues that a habeas petitioner may not be deprived of a hearing on the merits of his first federal habeas case for "equitable" reasons not founded in statute, rule and precedent, *Lonchar v. Thomas,* —— U.S. ——, 116 S.Ct. 1293, 134 L.Ed.2d 440 (1996), he offers no grammatically sensible way that Rule 9(b) can be read to treat the first prong—providing for dismissal for failing to allege "new and differ-

ent grounds" when the prior determination was on the merits—the same as the second prong—providing for dismissal for alleging "new and different grounds" when failing to do so in a prior petition was abusive. Nor are we persuaded that interpreting Rule 9(b) as the Advisory Committee does would impermissibly conflict with § 2244(b), as Farmer suggests. While § 2244(b) is predicated on an adjudication of the merits,[10] Rule 9(b) was also enacted by Congress, after § 2244(b). 28 U.S.C. § 2244(b) (enacted in 1966); Habeas Corpus Rule 9(b) (promulgated in 1976); *see also Ritchie v. Eberhart,* 11 F.3d 587, 593 n. 3 (6th Cir.1993) ("The abuse of the writ doctrine is codified ... in two enactments of equal status: Rule 9(b) and 28 U.S.C. § 2244(b)."), *cert. denied,* 510 U.S. 1135, 114 S.Ct. 1111, 127 L.Ed.2d 422 (1994). To the extent there is a conflict, the most recently passed statute or rule prevails. *See Boudette v. Barnette,* 923 F.2d 754, 757 (9th Cir.1991) (holding that a federal rule of civil procedure prevails over an earlier passed but conflicting United States Code section because "[w]hen two statutes conflict the general rule is that the statute last in time prevails as the most recent expression of the legislature's will") (citation omitted); *International Union, United Auto., Aerospace & Agr. Implement Workers of America, Local 737 v. Auto Glass Employees Fed. Credit Union,* 72 F.3d 1243, 1247 (6th Cir.1996) (explaining that the basis for the rule that a later passed statute controls is the "settled principle of statutory construction that when Congress drafts a statute, courts presume that it does so with full knowledge of the existing law").[11]

---

10. Section 2244(b) states in full:

When after an evidentiary hearing on the merits of a material factual issue, or after a hearing on the merits of an issue of law, a person in custody pursuant to the judgment of a State court has been denied by a court of the United States or a justice or judge of the United States release from custody or other remedy on an application for a writ of habeas corpus, a subsequent application for a writ of habeas corpus in behalf of such person need not be entertained by a court of the United States or a justice or judge of the United States unless the application alleges and is predicated on a factual or other ground not adjudicated on the hearing of the earlier application for the writ, and unless the court, justice, or judge is satisfied that the applicant has not on the earlier

application deliberately withheld the newly asserted ground or otherwise abused the writ.

11. Farmer suggests that interpreting "prior petition" as one not required to have been determined on the merits also conflicts with Rule 22–4(a) of the Ninth Circuit's capital habeas rules. Rule 22–4(a) provides:

A "first petition" for habeas corpus ... shall mean: the original filing relating to a particular conviction or sentence, and a subsequent or amended filing if the original filing was dismissed on grounds other than on the merits. The term[] "first petition" ... shall not include: ... (ii) a petition for habeas corpus that has been dismissed by the district court for lack of jurisdiction.

■ As we read both its text and its history, therefore, Rule 9(b) permits the district court to dismiss a second or successive petition if new and different grounds are alleged and the judge finds the failure of the petitioner to assert those grounds in a prior petition, whether or not resolved on the merits, was abusive.

## B

■ Nevada contends that Farmer has no authority for his position that abuse of the writ analysis is inapplicable unless a prior petition has been determined on the merits, and relies on *Sanders, McCleskey,* and *Bonin v. Vasquez*, 807 F.Supp. 586 (C.D.Cal.1992), to argue that Farmer's second return from state court with unexhausted claims and no exhausted claims is abusive. However, the state devotes most of its argument to inexcusable neglect, unreasonable delay, and Farmer's inability to meet Nevada's cause and prejudice standard upon return to state court. These arguments have nothing to do with whether Nevada's motion to dismiss for abuse of the writ was premature, as the district court concluded, and we therefore do not address them.[12] More to the point, Farmer argues that *McCleskey* abuse occurs only after a federal court addresses the merits of a previous petition, and that this circuit and others, have so held. We disagree.

So far as we are aware, there is no dispositive authority one way or the other, though *Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963) comes quite close. As the Advisory Committee Notes to Rule 9(b) reflect,[13] the Court in *Sanders* distinguished two principles: a successive application on a ground heard and denied on the merits in a prior application, and abuse of the writ.[14] *Id.* at 10, 15–19, 83 S.Ct. at 1074, 1077–79. As the Court explained with respect to the successive application claimed to be an abuse of the writ:

No matter how many prior applications for federal collateral relief a prisoner has made, the principle elaborated in Subpart A, supra [having to do with successive applications on grounds previously heard and determined on the merits] cannot apply if a different ground is presented by the new application. So too, it cannot apply if the same ground was earlier presented but not adjudicated on the merits. In either case, full consideration of the merits of the new application can be avoided only if there has been an abuse of the writ or motion remedy; and this the Government has the burden of pleading.

*Id.* at 17, 83 S.Ct. at 1078. Sanders's initial petition—like Farmer's—had not been denied on the merits.[15] *Id.* at 19, 83 S.Ct. at 1079. Sanders's second application alleged a

We see no inconsistency, as the second prong of Rule 9(b) has to do with alleging new and different grounds from those alleged in a "prior petition" whereas Rule 22–4(a) has to do with assuring that a certificate of probable cause will be issued and a stay of execution will be in place until the death penalty panel issues its mandate on the first petition addressed on the merits. Nothing we hold today affects application of the Circuit's automatic stay rules or implies that a petitioner should not have "a single habeas petition," *see Rose v. Lundy*, 455 U.S. at 520, 102 S.Ct. at 1204, heard on the merits in federal court.

**12.** In passing, both Nevada and Farmer remark on the fact that, at the time the second federal petition was dismissed, *Neuschafer v. Whitley,* 860 F.2d 1470 (9th Cir.1988), *cert. denied,* 493 U.S. 906, 110 S.Ct. 264, 107 L.Ed.2d 214 (1989), was the law of the circuit and that under it, a finding of abuse of the writ would not have been justified solely on account of failure to include unexhausted claims. *Id.* at 1476. Except to note that the district court's dismissal orders are

entirely understandable responses to *Rose v. Lundy* (initial petition), *Neuschafer* (second petition), and *McCleskey* (third petition), we believe that the significance to Farmer's conduct of *Rose v. Lundy, Neuschafer, McCleskey,* and the various orders in this case, are for the district court, not us, to evaluate.

**13.** Quoted in full, *supra* at 1555–56.

**14.** We recognized both the distinction, and the fact that different standards determine when a court may dismiss a petition as abusive and when it may dismiss one as successive, in *Neuschafer,* 860 F.2d at 1474, n. 8.

**15.** The dissent reads *Sanders* differently, *infra* at 1562, but as the Court itself explained, Sanders's first petition "was denied because it stated only bald legal conclusions with no supporting factual allegations," and "the denial, thus based, was not on the merits. It was merely a ruling that [Sanders's] pleading was deficient." *Sanders,* 373 U.S. at 19, 83 S.Ct. at 1079.

new and different ground for relief (mental incompetency), which the district court denied without a hearing on the footing that "'there is no reason given, or apparent to this Court, why petitioner could not, and should not, have raised the issue of mental incompetency at the time of his first motion....'" *Id.* at 6, 83 S.Ct. at 1072. While holding that a hearing on the second application was required, *id.* at 20, 83 S.Ct. at 1079–80, the Court noted that "it will be open to the [government] to attempt to show that petitioner's failure to claim mental incompetency in his first motion was an abuse of the motion remedy, within the principles of *Wong Doo* and *Price v. Johnston,* disentitling him to a hearing on the merits." *Id.* at 21, 83 S.Ct. at 1080.[16] This could not have been an available option if, as Farmer contends, abuse of the writ cannot be triggered unless there has been a prior determination on the merits.

By contrast, the cases that Farmer calls to our attention have to do with subsequent petitions that involved challenges based on the "same ground," or "successive," part of *Sanders.*[17] These cases naturally cite, and rely on, the rules applicable to "same ground" successive petitions, including the requirement that there be a prior determination on the merits of the same ground

against the petitioner. *Sanders,* 373 U.S. at 15, 83 S.Ct. at 1077. None limits the "new and different," or abusive part of *Sanders* to an earlier merits resolution; indeed, one case upon which Farmer relies, *Hamilton v. Vasquez,* 882 F.2d 1469 (9th Cir.1989), suggests that a petitioner *can* abuse the writ even though there has been no prior determination on the merits of a federal petition. *Hamilton's* first federal habeas petition was dismissed on the merits, but we reversed and ordered the petition dismissed without prejudice for failure to exhaust. Hamilton then brought a second federal habeas petition that alleged a new claim for relief. The district court rejected the state's alternative contentions that the petition should be dismissed as successive or abusive, and instead decided the merits of Hamilton's new claim against him without examining the state court record. *Id.* at 1470. We held that there was no same ground or successive petition problem, because Hamilton's first petition was dismissed without prejudice for failure to exhaust, and therefore "no federal court has yet addressed the merits of [Hamilton's] claim." *Id.* at 1473. But we also recognized that the absence of a prior merits determination wasn't dispositive of the state's alternative "abusive petition" argument, holding instead that the record did not

---

**16.** In *Wong Doo v. United States,* 265 U.S. 239, 44 S.Ct. 524, 68 L.Ed. 999 (1924), the petitioner's first application for habeas corpus presented two grounds for relief. After a hearing, during which the petitioner offered no evidence to support his second ground, the district court denied relief because the first ground "was not good in law." *Id.* at 240, 44 S.Ct. at 525. The petitioner filed a second petition and relied entirely on the second ground. Finding no reason why the petitioner could not have presented evidence to support the second ground in the first habeas proceedings, the Court affirmed the district court's dismissal of the second petition, concluding that "[t]o reserve the proof for use in attempting to support a later petition, if the first failed, was to make an abusive use of the writ of *habeas corpus.*" *Id.* at 241, 44 S.Ct. at 525.

·In *Price v. Johnston,* 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948), the petitioner's fourth habeas petition alleged a new claim, which the district court dismissed without a hearing on the ground that the petitioner had not raised the claim in his earlier petitions. *Id.* at 275–76, 68 S.Ct. at 1055–56. The Court explained that the new claim could be an abuse of

the writ, and remanded to the district court to afford the government an opportunity to plead abuse with particularity, and to give the petitioner a chance to prove: (1) that he lacked any knowledge of the facts necessary to state the claim in one of his earlier petitions; or (2) if he had the knowledge, that he had an excuse for not asserting the claim. *Id.* at 291–92, 68 S.Ct. at 1062–63.

**17.** *See Hutchinson v. Craven,* 415 F.2d 278, 280 (9th Cir.1969) (per curiam); *Tatum v. Christensen,* 786 F.2d 959, 964 n. 6 (9th Cir.1986), *overruled in part on other grounds,* 802 F.2d 1539 (9th Cir.1986) (en banc); *Richmond v. Lewis,* 948 F.2d 1473, 1480–81 (9th Cir.1990), *rev'd on other grounds,* 506 U.S. 40, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992); *Campbell v. Blodgett,* 997 F.2d 512, 515–17 (9th Cir.1992), *cert. denied,* 510 U.S. 1215, 114 S.Ct. 1337, 127 L.Ed.2d 685 (1994); *Hill v. Lockhart,* 894 F.2d 1009, 1010 (8th Cir.) (en banc), *cert. denied,* 497 U.S. 1011, 110 S.Ct. 3258, 111 L.Ed.2d 767 (1990); *Potts v. Zant,* 734 F.2d 526, 528–29 (11th Cir.1984), *cert. denied,* 475 U.S. 1068, 106 S.Ct. 1386, 89 L.Ed.2d 610 (1986).

support a finding that an abuse had in fact occurred:

> A federal court need not consider habeas claims previously unlitigated in federal court if it determines that the petitioner (1) made a conscious decision deliberately to withhold them from a prior petition, (2) is pursuing needless piecemeal litigation, or (3) has raised the claims only to vex, harass, or delay. Where there is no affirmative indication in the record that the petitioner made a conscious decision deliberately to withhold his claim, proceed by piecemeal litigation, to vex or harass or annoy the court or the state, a second petition raising a new claim is not an abuse of the writ.

> The state has presented no evidence that any of the factors outlined in *Sanders* are present. Moreover, there is nothing in the history of this case to indicate that Hamilton deliberately withheld his claim in the hope of being granted two hearings instead of one.

*Id.* (citations omitted).

Farmer also argues that the state must allege that there was a prior proceeding on the merits as part of its burden to invoke the abuse of the writ doctrine, citing *Watkins v. Champion,* 39 F.3d 273 (10th Cir.1994). It is not clear to us where this comes from, as *Watkins* simply says that, in accordance with *McCleskey,* the government bears the burden of pleading abuse of the writ, *id.* at 275, which the government satisfies if it "notes petitioner's prior writ history, identifies the claims that appear for the first time, and alleges that petitioner has abused the writ." *McCleskey,* 499 U.S. at 494, 111 S.Ct. at 1470.

More critically, Farmer contends that *McCleskey* itself incorporates the necessity of a prior proceeding on the merits of a previous federal petition based on the emphasis that the Court gives to the burdens of " 're-

examination of a conviction' following a first round of federal habeas litigation," as he puts it, and to "endless repetition of inquiry into facts and law," as the Court notes in quoting Bator, "Finality in Criminal Law and Federal Habeas Corpus for State Prisoners", 76 Harv.L.Rev. 441, 452–453 (1963). *McCleskey,* 499 U.S. at 491–92, 111 S.Ct. at 1468–69.[18] From these concerns Farmer infers that the policies prohibiting repetitive examination of a state conviction do not apply when there has been no initial examination of the merits of the case by the federal court.

We do not read *McCleskey* as speaking to the point one way or the other. While there had been a prior determination on the merits in McCleskey's case, that wasn't a factor in the Court's decision about what standard should govern in abuse of the writ cases. But the Court's explanation for why it was appropriate to meld the standards for procedural default and abuse of the writ, and its focus on the petitioner's conduct, undermines the premise of Farmer's argument:

> The prohibition against adjudication in federal habeas corpus of claims defaulted in state court is similar in purpose and design to the abuse-of-the-writ doctrine, which in general prohibits subsequent habeas consideration of claims not raised, and thus defaulted, in the first federal habeas proceeding. The terms "abuse of the writ" and "inexcusable neglect," on the one hand, and "procedural default," on the other, imply a background norm of procedural regularity binding on the petitioner. This explains the presumption against habeas adjudication both of claims defaulted in state court and of claims defaulted in the first round of federal habeas. A federal habeas court's power to excuse these types of defaulted claims derives from the court's equitable discretion.... For these reasons, both the abuse-of-the-writ doctrine and our procedural default jurispru-

---

18. In the cited passage, the Court states:

> If reexamination of a conviction in the first round of federal habeas stretches resources, examination of new claims raised in a second or subsequent petition spreads them thinner still. These later petitions deplete the resources needed for federal litigants in the first instance, including litigants commencing their

first federal habeas action.... And if reexamination of convictions in the first round of habeas offends federalism and comity, the offense increases when a State must defend its conviction in a second or subsequent habeas proceeding on grounds not even raised in the first petition.

*Id.* at 492, 111 S.Ct. at 1469.

dence concentrate on a petitioner's acts to determine whether he has a legitimate excuse for failing to raise a claim at the appropriate time.

*Id.* at 490, 111 S.Ct. at 1468 (citations omitted).

So does the Court's formulation of the question in abuse of the writ cases:

Abuse-of-the-writ doctrine examines *petitioner's* conduct. The question is whether petitioner possessed, or by reasonable means could have obtained, a sufficient basis to allege a claim in the first petition and pursue the matter through the habeas process. The requirement of cause in the abuse-of-the-writ context is based on the principle that petitioner must conduct a reasonable and diligent investigation aimed at including all relevant claims and grounds for relief in the first federal habeas petition.

*Id.* at 498, 111 S.Ct. at 1472 (citations omitted). We thus do not agree with Farmer that *McCleskey* itself indicates that abuse can only occur as a matter of law after a federal court has addressed the merits of a previous petition.

 We hold that a district court is not precluded as a matter of law from considering whether a petitioner has abused the writ by alleging in a subsequent federal habeas petition new and different grounds from those alleged in a prior federal habeas petition, whether or not that prior petition was determined on the merits. However, we emphasize how narrow this holding is. It does not mean that Farmer will never have any of his grounds heard on the merits in federal court. Claims that were presented in his initial and second federal habeas petitions but were not determined on the merits because they were unexhausted, are clearly outside Rule 9(b). Nevada acknowledges that all of Farmer's exhausted claims presented in the amended third petition should be heard, no doubt recognizing that a "single" federal petition filed after *Rose v. Lundy* exhaustion cannot be an abuse of the writ, as it is the very reason for dismissing the petition for failure to exhaust in the first

place. Farmer's claims may not in any event be "new and different," or abusive. In short, what we hold, and all that we hold, is that the district court was not precluded as matter of law from considering whether Farmer's conduct in failing to allege grounds in prior petitions that he alleged the third time around (if he did) was abusive solely on account of the fact that his prior petitions were not reviewed on the merits.

Rather, the possibilities are as *Sanders* first articulated, Rule 9(b) sets out, the Advisory Committee Notes reflect, and as the Court restated in *Sawyer v. Whitley*, 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992):

Unless a habeas petitioner shows cause and prejudice, a court may not reach the merits of: (a) *successive claims* which raise grounds identical to grounds heard and decided on the merits in a previous petition; (b) new claims, not previously raised which constitute an *abuse of the writ*; or (c) *procedurally defaulted claims* in which the petitioner failed to follow applicable state procedural rules in raising the claims. These cases are premised on our concerns for the finality of state judgments of conviction, and the significant costs of federal habeas review.

*Id.* at 338, 112 S.Ct. at 2518 (internal quotation and citations omitted).

## IV

Accordingly, we reverse because Rule 9(b) and *McCleskey* do not foreclose entertaining the state's motion to dismiss for abuse of the writ solely because Farmer's prior petition had not been determined on the merits, as the district court concluded. We therefore vacate its order dismissing Farmer's amended third petition, and remand for it to consider the state's motion to dismiss for abuse of the writ. However, we express no opinion on whether the grounds alleged in Farmer's amended third petition are "new and different," or if they are, whether there has been any abuse of the writ. That is entirely for the district court to decide, in its discretion.[19]

**19.** Nevada alternatively asks us to conclude that the district court should have ruled that all 27

claims contained in Farmer's amended third petition are procedurally barred. But for the same

REVERSED; VACATED AND RE-MANDED.

SCHROEDER, Circuit Judge, concurring in part and dissenting in part:

I concur in the holding that we have jurisdiction to consider the appeal, but I respectfully dissent from the majority's remand to the district court to consider possible abuse of the writ. The majority holds that inclusion of unexhausted claims in petitioner's third amended petition may constitute abuse, even though Farmer has never had a determination on the merits of any of his habeas claims. In my view, the district court has skillfully negotiated the hairpin turns in prevailing habeas corpus jurisprudence over the past decade in order to bring Farmer to the point where he can bring all of his claims to resolution in one petition. I would affirm the district court's order denying Nevada's motion to dismiss for abuse of the writ, for two reasons.

I.

First, even assuming the majority is correct in holding that there can be an abuse of the writ pursuant to Rule 9(b) of the Federal Habeas Corpus Rules when there has never been a prior adjudication on the merits, this particular case is not one in which such a finding of abuse could be made. There is no doubt Farmer's first two petitions containing unexhausted claims were properly dismissed under *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). Pursuant to this court's then-controlling decision in *Neuschafer v. Whitley*, 860 F.2d 1470 (9th Cir. 1988), the filing of a later petition in order to raise claims that had not been exhausted at the time a first federal petition was adjudicated could not, as a matter of law, have constituted an abuse of the writ because there had been no deliberate withholding of claims. Thus, after the dismissal of the sec-

ond petition in this case, Farmer could have proceeded to have only his exhausted claims decided in a new petition without forfeiting unexhausted claims.

By the time Farmer filed his third petition, that law had changed. The Supreme Court had held in *McCleskey v. Zant*, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) that a petitioner who filed a second § 2254 petition raising a new claim not decided in his earlier petition had abused the writ. The petitioner would not be permitted to obtain a hearing on the merits of the new claim unless he established "cause and prejudice." The district court therefore correctly recognized that under *McCleskey*, once Farmer obtained a hearing on the merits of any of his claims, he could no longer easily return to federal court on a new petition raising claims that were not exhausted when the earlier petition was filed. This is why the district court gave Farmer six months to file a new federal petition raising all claims.

When that third amended petition still contained unexhausted claims that would require dismissal pursuant to *Rose v. Lundy*, the district court wisely, in my view, decided the proper course was to dismiss without prejudice and place strict time limits on the filing of a state court petition in order to allow the state courts to determine whether the unexhausted claims were valid, invalid or, as Nevada had insisted, procedurally barred.

Both the filing of the third amended complaint and the district court's dismissal of it without prejudice were done in accordance with prevailing law in order to satisfy the requirements of *Rose v. Lundy* and *McCleskey v. Zant*. There is no basis in this record to support the state's assertion that the third amended complaint was filed only to vex, harass, and delay. Indeed, the Supreme Court in *Sanders v. United States*, 373 U.S. 1, 22–23, 83 S.Ct. 1068, 1081, 10 L.Ed.2d 148 (1963) encouraged the district courts to refrain from deciding petitions on the merits until all possible claims were before them.

reasons we will not decide whether Farmer has in fact abused the writ, we decline to resolve this procedural default issue, and instead leave it to the district court on remand. *See Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir.1991) (deeming petition exhausted, and therefore properly dismissed, where petitioner's claims were now procedurally barred from presentation to state court); *see also*

*Moran v. McDaniel*, 80 F.3d 1261, 1269–70 (9th Cir.1996) (rejecting an argument that Nevada's procedural bar rules are not adequate, and concluding that "the Nevada Supreme Court consistently applies its procedural rules to bar review of the merits of an untimely claim in the absence of a showing of cause and lack of prejudice to the State.").

That is exactly what the district court did in this case. The remand is unnecessary.

## II.

Second, the district court in my view correctly held as a matter of law that there could not be an abuse of the writ under Rule 9(b) when there has never been an adjudication of any prior claim on the merits. In reversing, the majority correctly recognizes that Rule 9(b) was promulgated to reflect principles enunciated in *Sanders v. United States, supra,* but then gets *Sanders* wrong.

The majority's analysis depends on the premise that *Sanders* itself involved a case where a previous habeas petition had not been decided on the merits. *See* majority op., pp. 1557–58. I do not believe that premise is accurate.

*Sanders* involved a second petition. In his first petition, Sanders alleged that the indictment was invalid, that he was denied effective assistance of counsel, and that his guilty plea was involuntary. *Sanders,* 373 U.S. at 5, 83 S.Ct. at 1071. Sanders made insufficient factual allegations in support of his claims. *Id.,* 83 S.Ct. at 1072. The district court, however, did not simply deny the petition because of the absence of supporting factual allegations; it also held that the court records affirmatively refuted Sanders' three claims for relief. *Id.* That was an adjudication on the merits. See *id.* at 16, 83 S.Ct. at 1077, explaining that in order for there to be a ruling on the merits for abuse purposes, the court must either refute the allegations from its own records or hold a hearing. The Court said that an "adjudication on the merits" in a prior application means that "if factual issues were raised in the prior application," then either the application was "denied on the basis that the files and records conclusively resolved these issues," or "an evidentiary hearing was held." *Id.*

The concept of abuse of the writ is a subset of the larger realm of *res judicata* claim preclusion. While prior habeas determinations have less preclusive effect than ordinary judgments, they do have some preclusive effect. *See id.* at 8–11, 83 S.Ct. at 1073–75 (citing and discussing *Salinger v. Loisel,* 265 U.S. 224, 44 S.Ct. 519, 68 L.Ed.

989 (1924); *Wong Doo v. United States,* 265 U.S. 239, 44 S.Ct. 524, 68 L.Ed. 999 (1924); *Price v. Johnston,* 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948)). It is hornbook law that a prior judgment does not have preclusive effect unless it is a decision on the merits. *See* Restatement (Second) of Judgements §§ 13 & 20 (1982); *Kremer v. Chemical Const. Corp.,* 456 U.S. 461, 466 n. 6, 102 S.Ct. 1883, 1889 n. 6, 72 L.Ed.2d 262 (1982). The Supreme Court underscored this point recently in *Felker v. Turpin,* — U.S. —, —, 116 S.Ct. 2333, 2340, 135 L.Ed.2d 827 (1996), where it stated that "restrictions on successive petitions constitute a modified res judicata rule, a restraint on what is called in habeas corpus practice 'abuse of the writ.'" The majority decision is thus contrary to basic claim preclusion principles.

The majority's reliance on *Hamilton v. Vasquez,* 882 F.2d 1469 (9th Cir.1989), and *Sawyer v. Whitley,* 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992), is not convincing. In *Hamilton* we did not, as the majority opinion states, "recognize[ ] that the absence of a prior merits determination wasn't dispositive of the state's alternative 'abusive petition' argument." Majority op. p. 1558. Instead, we decided the abuse of the writ argument on the merits because neither party raised the question whether there can be an abuse absent a prior adjudication on the merits. 882 F.2d at 1473. We did not deal with the issue presented here. The language quoted from *Sawyer,* on page 1560 of the majority's opinion, is not persuasive because *Sawyer* concerned the "miscarriage of justice" exception to the bar against consideration of successive claims, and not whether a successive claim may constitute an abuse of the writ. *Sawyer,* 505 U.S. at 339–40, 112 S.Ct. at 2518–19.

Apart from *Sanders,* neither the majority opinion nor the state cites any case in which it is even suggested that Rule 9(b) authorizes finding an abuse when there has been no prior decision on the merits. The principles enunciated in *Sanders* were drawn from an extensive discussion of prior cases, all of which considered an earlier decision on the merits to be a prerequisite to consideration of any government claim of abuse in a successive petition. In *Wong Doo v. United States,* 265 U.S. 239, 239–40, 44 S.Ct. 524,

525, 68 L.Ed. 999 (1924), the petitioner raised two grounds for relief in his first federal habeas petition, but withheld any proof on the second ground and lost on the merits. Later, he filed a second petition, relying exclusively on the second ground alleged in the first petition. *Id.* at 240, 44 S.Ct. at 525. The Supreme Court observed that petitioner had not offered any "reason for not presenting the proof at the outset," and held that "[t]o reserve the proof for use in attempting to support a later petition, if the first failed, was to make an abusive use of the writ of habeas corpus." *Id.* at 241, 44 S.Ct. at 525.

*Price v. Johnston,* 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948), also involved a prior adjudication on the merits. In *Price,* the petitioner raised a new claim for relief in his fourth successive federal habeas petition. *Id.* at 286, 288–89, 68 S.Ct. at 1060, 1061–62. The Supreme Court remanded for a determination of whether the petitioner abused the writ by failing to raise this new claim in his earlier petitions, two of which had been denied on the merits. *Id.* at 290–94, 68 S.Ct. at 1062–1064.

In addition to *Wong Doo* and *Price,* the opinion in *Sanders* drew heavily from *Salinger v. Loisel,* 265 U.S. 224, 44 S.Ct. 519, 68 L.Ed. 989 (1924), which also concerned successive federal habeas petitions. *See Sanders,* 373 U.S. at 8–9, 83 S.Ct. at 1073–74. *Sanders* noted that in *Salinger,* "[t]he petitioner's successive applications were properly denied because he sought to retry a claim previously fully considered and decided against him." *Id.* at 9, 83 S.Ct. at 1074. The *Salinger* Court observed that

> [t]he action of the court or justice on the second application will naturally be affected to some degree by the character of the court or officer to whom the first application was made, and the fullness of the consideration given to it.

265 U.S. at 231–32, 44 S.Ct. at 522 (quoting *Ex parte Cuddy,* 40 F. 62, 66 (1889)). Clearly, *Salinger,* like *Wong Doo* and *Price,* required a prior habeas adjudication on the merits.

Our overall concern should be with making habeas corpus procedures more efficient, orderly and understandable. The Supreme Court and Congress have insisted that all habeas claims be consolidated insofar as

practicable and that they be promptly resolved. The latter goal can never be achieved in this case. That is beyond our control. What is within our control is to let the district court proceed to adjudicate a consolidated petition. The majority refuses to do this and instead issues an open invitation to respondents in habeas cases to file more motions and to all parties to file more appeals. Let's stop making more work for the courts and doing less justice for litigants in habeas cases.

Because there is no factual basis to suggest the third amended complaint was filed for vexatious purposes, and for the independent reason that, as a matter of law, I believe the district court correctly recognized there can be no abuse under Rule 9(b) unless there has been a prior adjudication on the merits, I respectfully dissent from the order remanding for a determination of whether there has been an abuse of the writ.